UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-104-GNS-HBB

CARL WATSON RICCHUITE                                               PLAINTIFF

v.

JOEY JOHNSON, et al.                                                DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Curtis Crick's Objection to Magistrate Judge's Order of July 13, 2015 (Def.'s Obj. to Magistrate Judge's Order of July 13, 2015, DN 51 [hereinafter Def.'s Obj.]) and Defendant Jimmy Berghammer's Objection to Magistrate Judge's Order of July 13, 2015 (Def.'s Obj. to Magistrate Judge's Order of July 13, 2015, DN 52).[1] The objections are ripe for adjudication. For the reasons detailed below, the Court **OVERRULES** the objections and **AFFIRMS** the Magistrate Judge's Order.

### I.    BACKGROUND

On July 29, 2014, Plaintiff Carl Watson Ricchuite ("Ricchuite") filed this action alleging that Defendant Joey Johnson ("Johnson") "embarked on a campaign to harass, intimate, annoy, defame, and maliciously prosecute [Ricchuite]." (Compl. 1-2, DN 1-1). Defendants Curtis Crick ("Crick"), who is employed by the Kentucky State Police, and Jimmy Berghammer ("Berghammer"), who is employed by the Christian County Sheriff's Office, are alleged to have

---

[1] Because Defendant Berghammer incorporates by reference Defendant Crick's motion and makes no additional arguments, the Court will refer only to Defendant Crick's motion.

aided, assisted, abetted, acted in concert with, and conspired with Johnson. (Compl. 4). On August 15, 2014, Defendants removed the action to this Court. (Notice of Removal, DN 1).

The facts relevant to this motion are that on May 6, 2014, Crick observed Ricchuite fail to signal a left turn at a stop sign in the vicinity of the residence of a known drug dealer late on a weeknight. (Def.'s Reply to Pl.'s Resp. to Mot. for Ct. Order to Obtain Rs. of Cumberland Hall Hospital 1, DN 35 [hereinafter Def.'s Reply]). Ricchuite admits that during the stop, he "might have rubbed [his] teeth or twittled [his] thumbs]." (Def.'s Resp. to Ct. Orders Entered May 28, 2015 Regarding the Applicability of Certain Federal Statutes & Regulations Ex. 1 at 208-09, DN 40-1). He attributed this behavior to a vitamin deficiency, mouth ulcers, and nerve damage. (Def.'s Resp. to Ct. Orders Entered May 28, 2015 Regarding the Applicability of Certain Federal Statutes & Regulations Ex. 1 at 209). Ricchuite also admitted that he could have been chomping his guns, that he was probably pressing his fingers together, and that he had cotton mouth. (Def.'s Resp. to Ct. Orders Entered May 28, 2015 Regarding the Applicability of Certain Federal Statutes & Regulations Ex. 1 at 211).

Ricchuite failed three of the four sobriety tests that Crick administered to him. (Def.'s Reply 2). Crick "found sufficient evidence of drug use and arrested [Ricchuite] for DUI. Post-arrest, [Ricchuite] continued to exhibit similarly odd and unusual behavior." (Def.'s Reply 2). A jury ultimately acquitted Ricchuite of the DUI charge stemming from that stop and arrest. (Def.'s Reply 2).

On April 10, 2015, Crick moved to obtain Ricchuite's certified medical records from Cumberland Hall Hospital ("CHH"). (Def.'s Mot. for Ct. Order to Obtain Rs. of Cumberland Hall Hospital, DN 29). Crick argues that, as Ricchuite has contended "that his prior mental/physical ailments are reasons why he may have appeared to be under the influence,"

2

Crick is entitled to Ricchuite's mental health records as they are "highly relevant to the malicious prosecution claim." (Def.'s Reply 2). Defendants Johnson and Todd County later joined in the motion (Defs.' Joinder in Mot. for Ct. Order to Obtain Rs. of Cumberland Hall Hospital, DN 36), as did Berghammer (Def.'s Joinder in Mot. to Obtain Rs. of Cumberland Hall, DN 41).

On July 13, 2015, the Magistrate Judge denied Crick's motion. (Order, DN 48). Crick and Berghammer have timely filed objections to the Order. This matter is thus ripe for adjudication.

## II. JURISDICTION

Ricchuite alleges violations of his rights under the United States Constitution. This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As to Ricchuite's state-law claims, this Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

## III. STANDARD OF REVIEW

The Court reviews a magistrate judge's orders on non-dispositive issues referred pursuant to 28 U.S.C. § 636(b)(1)(A) under a "clearly erroneous or contrary to law" standard. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2011) (citing *United States v. Raddatz*, 447 U.S. 667, 673 (1980)).

## IV. DISCUSSION

The Public Health Service Act governs the disclosure of medical records relating to the treatment of drug and alcohol abuse patients in federally funded treatment programs. 42 U.S.C. § 290dd-2(a). Absent consent by the patient, a court may issue an order for release of such records


"after application showing good cause therfor [sic], including the need to avert a substantial risk of death or serious bodily harm." 42 U.S.C. § 290dd-2(b)(2)(C). The court is to "weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services" when assessing "good cause." 42 U.S.C. § 290dd-2(b)(2)(C). Regulations associated with the Public Health Act add that "good cause" also requires that "[o]ther ways of obtaining the information are not available or would not be effective . . . ." 42 C.F.R. § 2.64(d)(1). The party seeking disclosure bears the burden to establish good cause. *United States v. Cresta*, 825 F.2d 538, 552 (1st Cir. 1987).

The Magistrate Judge found that the additional requirement of good cause enunciated in 42 C.F.R. § 2.64 had been met because there is no other more effective way of obtaining the information sought. (Order 5). The Magistrate Judge found, however, that "the public interest and need for disclosure do not outweigh the potential injury to Ricchuite, the physician-patient relationship, and the treatment services." (Order 6). That conclusion is based on the fact that the medical records would reflect Ricchuite's participation in a drug treatment program approximately thirteen years ago, making the records "too remote in time to be relevant to Ricchuite's mental health and the substances he consumed in the days before the events that form the basis for his civil action and the claims asserted in his complaint." (Order 5).

Crick argues that first that his burden is by a preponderance of the evidence, as 42 C.F.R. § 2.64(d)(2) uses the phrase "outweigh" rather than "substantially outweigh." (Def.'s Obj. 5). Crick has cited no case law in support of this conclusion; nonetheless, the Court need not determine the weight of Crick's burden as he does not prevail under the lighter "preponderance of the evidence" burden.

Crick argues that there is a compelling public interest in the form of civil defendants' right to a fair trial, and that Crick has a compelling interest as he "has been sued individually . . . and is personally staring down the gun barrel of significant damages claims." (Def.'s Obj. 5-6). He also argues that Ricchuite's privacy interest in 13-year-old treatment records is "relatively weak," notes that "there is no current doctor-patient relationship that will be adversely affected," and asserts that "CHH's treatment effectiveness will not be hindered in any fashion." (Def.'s Obj. 7). In essence, Crick argues that his need as a civil defendant to acquire Ricchuite's medical records outweighs Ricchuite's privacy interest in his drug treatment program records from approximately 13 years ago.

### A.     <u>42 C.F.R. § 2.63(a)</u>

In support of his argument, Crick relies upon the decision in *Whyte v. Connecticut Mutual Life Insurance Co.*, 818 F.2d 1005 (1st Cir. 1987). (Def.'s Obj. 7). *Whyte*, as applied to his matter, stands for the proposition that the First Circuit found in a case involving a life insurance policy containing an exclusion due to suicide that a widow did not "put the content of [her dead husband's] communications with [the alcohol treatment center] in question during the trial," and thus that no waiver of the protections of 42 C.F.R. § 2.63 occurred. *Whyte*, 818 F.2d 1010 (internal quotation marks omitted. Here, the Magistrate Judge cited 42 C.F.R. § 2.63 in his Order denying Crick's motion, but did not rely upon that regulation in reaching its holding. (*See* Order 5-6). Accordingly, the Court will not address arguments concerning 42 C.F.R. § 2.63 in this Memorandum Opinion and Order.

Crick also argues that *International Brotherhood of Teamsters v. Certified Grocers Midwest, Inc.*, 737 F. Supp. 1030 (N.D. Ill. 1990), does not support Ricchuite's position as it is distinguishable. (Def.'s Obj. 8). That case likewise addresses 42 C.F.R. § 2.63(a)(3), and thus

5

will not be addressed any further by the Court. Neither will Crick's arguments regarding the Magistrate Judge's recitation of 42 C.F.R. § 2.63(a) and notation of its applicability in this instance (Order 4-5). (Def.'s Obj. 14-17).

### B. Sixth Circuit Case Law

Crick also argues that the Magistrate Judge's order is contrary to Sixth Circuit case law. He begins with *Biggers v. Green Acres Health Services, Inc.*, No. 5:14-CV-10, 2014 WL 6460705 (W.D. Ky. Nov. 17, 2014). In that case, the Court found the medical records of the plaintiff's daughter, whose pregnancy complications formed the basis for the plaintiff's request under the Family Medical Leave Act, were relevant and protected by an already existent protective order. *Id.* at *1-2. *Biggers* is distinguished on the basis that the medical records were central to the plaintiff's claim; the records sought in this case may potentially reflect on Ricchuite's mental state and substance abuse some 13 years ago, long before the events detailed in the Complaint. Finally, while Ricchuite could protect himself from embarrassment by seeking a protective order and designating the medical records as confidential, doing so is unnecessary as the records sought are not discoverable.

Crick next cites *Weiss v. Astellas Pharma, US, Inc.*, No. 05-527-JMH, 2007 WL 2137782 (E.D. Ky. July 23, 2007), a products liability case involving prescribed pharmaceuticals. That court held that neither Kentucky nor the Sixth Circuit recognizes a physician-patient privilege, and consequently that defense counsel "should be permitted to have *ex parte* contact with plaintiff's treating physicians and to conduct *ex parte* interviews with these treating physicians." *Id.* at *3-5. This case is easily distinguished on the basis that the discovery sought was interviews with treating physicians; the records sought in this case are 13 years old, and there is no

6

allegation that Ricchuite has sought treatment from CHH since that time. This case is also persuasive authority only, and not binding upon this Court.

Next Crick cites *Fannon v. Johnson*, 88 F. Supp. 2d 753 (E.D. Mich. 2000). In that case, the plaintiff alleged that the defendant police officer gave false testimony in order to incarcerate plaintiff for ten years and that the defendant was using illegal drugs at that time. *Id.* at 758. The plaintiff sought ten-year-old treatment records of the defendant in order to impeach the defendant's deposition testimony and to show his motive, *i.e.*, "to assist in the determination of the nature and scope of [defendant's] addictions to controlled substances, as reflecting upon his ability to properly discharge his duties as an undercover narcotics officer." *Id.* The court in *Fannon* noted that "it is undisputed that [defendant] was engaged in illicit drug thefts and drug use near the time of plaintiff's wrongful arrest for cocaine distribution," and that the evidence sought may have been "highly relevant for purposes of impeachment and credibility." *Id.* at 758-59. It also noted that "the contemporaneously recorded information regarding [defendant's] drug abuse treatment may well be the most accurate source of information as to the nature and extent of [defendant's] drug use." *Id.* at 759. This case is easily distinguished. The events in question in the present case occurred 13 years ago, and there is no allegation that this material is needed to impeach Ricchuite's deposition testimony. This case is also persuasive authority only, and not binding upon this Court.

The next substantive case Crick relies on is *Stewart v. Orion Federal Credit Union*, 285 F.R.D. 400 (W.D. Tenn. 2012). In that case, the employer-defendant sought the mental health medical records of the ex-employee-plaintiff, as she pleaded emotional distress. *Id.* at 401-02. This case is easily distinguished. The age of the sought-after mental health records is not given, but, given the context in the order, the Court assumes them to be relatively contemporaneous

7

with the present action. As noted several times above, the records sought in this case are approximately 13 years old, and thus irrelevant to Ricchuite's *current* mental health status and emotional damages claims.

Crick next cites a case in which the Sixth Circuit discussed waiver of any privilege encompassing mental health records when the party has made his or her mental health an issue. *Simon v. Cook*, 261 F. App'x 873 (6th Cir. 2008). The issue is not privilege, however, and the case is therefore inapplicable.

Finally, Crick cites *United States v. Crawford*, No. 98CV743, 97CV1033, 1999 WL 33921851 (N.D. Ohio Feb. 4, 1999). The court in *Crawford* held broadly that "by asserting an emotional distress claim, a plaintiff has placed one's state of mind at issue, and has, thus, opened herself up to discovery of any past situations, behaviors, or actions which are relevant to that claim." *Id.* at *3 (citing *Ferrell v. Glen-Gery Brick*, 678 F. Supp. 111, 112 (E.D. Pa. 1987); *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 299 (E.D. Pa. 1983)). To the extent of the overbroad holding in *Crawford*, the Court declines to follow that holding. It appears, however, that *Crawford*'s limitation of such discovery to records "relevant" to the asserted claim would clearly not encompass treatment records over 13 years old.

  C. <u>Case Law from Other Circuits</u>

Finally, Crick cites several cases from other circuits and attempts to apply their holdings to this case. All of the cases cited by Crick from other circuits are equally distinguishable. The primary distinguishing feature is, as it was with the intra-circuit cases cited, the age of the records in relation to the triggering event or events. Crick has not explained how the CHH records are relevant to this matter, other than to assert that he "believes the issue of discoverability of Plaintiff's medical records to be of utmost importance, vital to his right to a

8

fair trial, and essential to a proper defense." (Def.'s Obj. 3). Crick does not, however, explain the basis for this belief, other than the fact that Ricchuite has pleaded intentional infliction of emotional distress and testified in his deposition that he suffers from medical conditions that may have contributed to his behaviors on the night that he was arrested for a DUI offense. (Def.'s Reply to Pl.'s Resp. to Mot. for Ct. Order to Obtain Records of Cumberland Hall Hospital 2-3, DN 35). This is insufficient to show good cause by a preponderance of the evidence that aged records from long-past drug treatment are discoverable with respect to the present claims. The Magistrate Judge committed no clear errors in his disposition of Crick's motion, nor is the Magistrate Judge's conclusion contrary to law.

### V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Curtis Crick's Objection to Magistrate Judge's Order of July 13, 2015 (DN 51) and Jimmy Berghammer's Objection to Magistrate Judge's Order of July 13, 2015 (DN 52) are **OVERRULED**, and the Magistrate Judge's Order (DN 48) is **AFFIRMED**.

**Greg N. Stivers, Judge**
**United States District Court**
September 24, 2015

cc: counsel of record